UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SIOUX STEEL COMPANY, a South Dakota corporation, | Civ. 15-4136 |
| Plaintiff, | |
| vs. | **STATEMENT OF UNDISPUTED MATERIAL FACTS** |
| KC ENGINEERING, P.C., an Iowa corporation, | |
| Defendant. | |

Defendant KC Engineering, P.C., ("KC Engineering"), by and through its undersigned attorneys of record, and pursuant to Fed. R. Civ. P. 56, respectfully submits this statement of undisputed material facts in support of its motion for partial summary judgment. The citations below refer to attachments to the Affidavit of Michael F. Tobin in Support of Motion for Summary Judgment or the files and records of this action. The following facts are not in dispute and support the motion for partial summary judgment:

1. Sioux Steel Company ("Sioux Steel") manufactures and sells hopper silos for handling and storing grain commodities. (Doc. 17 ("Amended Complaint"), ¶ 5).

2. Sioux Steel manufactured and sold a 30' Diameter Hopper Cone Assembly and silo bin ("the Hopper Bin") to Agropecuaria El Avion ("Agropecuaria"), which was installed at a Agropecuaria plant in Tepic, Mexico. (Amended Complaint, ¶ 12).

3. The Hopper Bin failed, resulting in the destruction of the bin and fatal injuries to two Agropecuaria employees. (Amended Complaint, ¶ 13-14).

4. The structural failure of the Hopper Bin occurred when its seams separated and catastrophically discharged the contents of the silo. (Amended Complaint, ¶ 17).

1

5. Agropecuaria sought damages from Sioux Steel, which subsequently resulted in a settlement agreement between the two parties. (Tobin Aff. at Ex. E; Amended Complaint, ¶ 26).

6. The terms of the Settlement Agreement held that Agropecuaria released Sioux Steel, and all other potential "joint tortfeasors," from all liability related to the collapse of the Hopper Bin. (Tobin Aff. at Ex. E).

7. Sioux Steel filed this lawsuit against KC Engineering, alleging that KC Engineering was negligent in failing to catch a mistake originally in Sioux Steel's design of the Hopper Bin, a mistake initially made by a Sioux Steel engineer who used a wrong formula. (Amended Complaint, ¶ 20-24).

8. Chad Kramer ("Kramer") is an engineer for Sioux Steel and designed the Hopper Bin that failed. (Deposition of Kramer ("Kramer Depo."), 9).

9. At the time of its design, the Hopper Bin was an entirely new sort of bin for Sioux Steel meant to expand its product line to compete with others in the industry who manufactured hoppers. (Kramer Depo., 9-10, 29-30).

10. As part of the Hopper Bin's design plans, Kramer calculated the various loads, forces, and stresses that would be applied on both the vertical and horizontal seams. (Kramer Depo., 17-18).

11. Kramer also calculated the utilization ratio for the seams, which informs how much of the allowable capacity is utilized. (Kramer Depo., 21).

12. According to the utilization ratios calculated by Kramer for the Hopper Bin, multiple vertical seams of the Hopper Bin were over-stressed. (Kramer Depo., 22).

13. No other engineers at Sioux Steel, other than Kramer, reviewed or oversaw Kramer's design of the Hopper Bin. (Kramer Depo., 9, 26).

14. Where the utilization ratio is above one, there is a problem, which was the case at the 28-foot and the 15-foot diameter of the Hopper Bin. (Kramer Depo., 22, 23).

15. Kramer did not know or appreciate these problematic rations until the Hopper Bin had failed. (Kramer Depo., 23).

16. Due to the errors relating to the utilization ratios, the Hopper Bin should never have been sent out. (Kramer Depo., 24).

17. The problematic utilization ratios were due to a math error and/or mistake by Kramer. (Kramer Depo., 24).

18. The mistake occurred because Kramer had utilized the wrong formula for calculating the utilization ratios. (Kramer Depo., 92-93).

19. Kramer's mathematical errors led to the collapse of the Hopper Bin. (Kramer Depo., 83-84).

20. Due to the failure of the Hopper Bin in Mexico, Sioux Steel made changes to account for the problematic utilization ratios, specifically modifying the hopper panels, changing the bolt spacing, and increasing the edge distances from the edge of the material to the edge of the bolts. (Kramer Depo., 24).

21. Sioux Steel did not have these subsequent changes to the Hopper Bin reviewed or vetted by any outside company. (Kramer Depo., 79).

22. Prior to the manufacture and sale of the Hopper Bin, Sioux Steel retained KC Engineering to perform a structural engineering analysis and design review of two hopper cones that Sioux Steel had designed and proposed to be used with its eighteen and thirty-foot diameter grain bins. (Kramer Depo., 27-28; Tobin Aff. at Ex. D).

23. As part of that engineering analysis and design review, KC Engineering first ran Sioux Steel's design through a software program. (Kramer Depo., 34-35).

24. The purpose of this analysis and review was to determine some general forces and tensions within the silo and cone but said analysis did not speak to the adequacy of the vertical seams, nor was it meant to. (Kramer Depo., 34-35, 46; Tobin Aff. at Ex. D).

25. KC Engineering was also to review drawings and calculations provided by Sioux Steel. (Kramer Depo., 33; Tobin Aff. at Ex. D; Jason O'Mara Deposition ("O'Mara Depo."), 29).

26. Sioux Steel did not provide its calculations to Sioux Steel, even though KC Engineering had asked from them in their proposal. (Kramer Depo., 34-35, 38, 41; Tobin Aff. at Ex. D; O'Mara Depo., 29).

27. Calculations were necessary in order to know whether what's shown on the drawing is adequate or not and that the drawings cannot be reviewed for adequacy without doing calculations. (O'Mara Depo., 60).

28. While the calculations were not provided to KC Engineering, Sioux Steel did provide drawings that were reviewed. (Derek Matthies Depo., 13).

29. Sioux Steel was provided a report from KC Engineering regarding its review of Sioux Steel's design. (Kramer Depo., 46).

30. Sioux Steel did not review the entire report from KC Engineering. (Kramer Depo., 46).

31. Had Sioux Steel read the results, it would have known that KC Engineering did not review any of the vertical seams that were subject to Kramer's math errors. (Kramer Depo., 46-47).

32. KC Engineering provided information showing which seams they did and did not review i.e. spot-checking. (Kramer Depo., 47).

33. KC Engineering did review the horizontal connections. (Kramer Depo., 47)

34. KC Engineering's decision to spot-check was a direct result of Sioux Steel's failure to provide its calculations, which it was required to do. (O'Mara Depo., 48, 61).

35. The spot-checks that were done did not show that the connections reviewed were significantly overdesigned or significantly underdesigned. (O'Mara Depo., 48).

36. The report provided by KC Engineering documented what was checked and Sioux Steel could have reviewed the report to see what was and was not checked by KC Engineering. (O'Mara Depo., 50-51).

37. Sioux Steel alleges as a direct and proximate cause of KC Engineering's alleged negligence, Sioux Steel has incurred damages for the failure of the Hopper Bin. (Amended Complaint, ¶ 25-31).

38. Sioux Steel does not allege that KC Engineering's negligence was the sole cause of its alleged damages. (*See generally* Amended Complaint).

39. Kramer conceded that blame was with both Sioux Steel and KC Engineering. (Kramer Depo., 88).

Dated this 16th day of March, 2018.

        /s/ *Michael F. Tobin*
        Michael F. Tobin
        Mitchell W. O'Hara
        BOYCE LAW FIRM, L.L.P.
        300 South Main Avenue
        P.O. Box 5015
        Sioux Falls, SD 57117-5015
        (605) 336-2424
        mftobin@boycelaw.com
        mwohara@boycelaw.com
        Attorneys for Defendant KC Engineering, P.C.