UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SIOUX STEEL COMPANY, a South Dakota corporation, | ) ) ) | CIV. 15-4136 |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| KC ENGINEERING, P.C., an Iowa corporation, | ) ) ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, Sioux Steel Company ("SSC"), by and through their counsel of record, Goodsell Quinn, LLP, and submits this Response in Opposition to Defendant's Motion for Summary Judgment (the "Response"). Defendant's Motion for Summary Judgment (the "Motion") was brought pursuant to Rule 56 of the Federal Rules of Civil Procedure, and premised on Defendant's assertion that SSC's claims should be barred pursuant to SDCL 20-9-2. In support of SSC's Response, SSC relies on SSC's Response in Opposition to Defendant's Statement of Undisputed Material Facts, which is incorporated herein.

## INTRODUCTION

Defendant has moved for Summary Judgment on the exclusive basis that SSC was contributorily negligent as a matter of law. Defendant alleges that SSC was negligent in the following ways: (1) SSC negligently designed the Hopper/Silo submitted to Defendant for professional engineering review, (2) SSC did not have appropriate internal measures to "catch" the mathematical error submitted to Defendant for professional engineering review, and (3) SSC did not "catch" Defendant's error when Defendant approved the design submitted to Defendant for professional engineering review. (Doc. 32, at 11.) Each of these allegations of negligence

1

completely ignores Defendant's duty and the fundamental purpose of Defendant's design review -- to find and correct errors in the design plan through competent engineering practices. Affidavit of G. Verne Goodsell ("Goodsell Aff."), Exhibit ("Ex.") K, Deposition of Jason O'Mara ("O'Mara Depo."), 9:19-25;10:1-5.  Had Defendant conducted a competent and professional engineering review, the failure would have been averted, and the instant case would not have been filed.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. However, as the non-moving party, the Court is compelled to view all disputed facts in the light most favorable to SSC.  *Ghane v. West*, 148 F.3d 979, 981 (8th Cir. 1998).  If a reasonable jury could return a verdict for the nonmoving party, the motion for summary judgment should be denied.  *Mehrkens v. Blank*, 556 F.3d 865, 868-69 (8th Cir. 2009) (citations omitted). For the reasons set forth below, genuine issues of material fact remain for the fact finder to resolve, which could, and likely will, lead a reasonable jury to find in SSC's favor. Therefore, summary judgment is inappropriate, and Defendant's Motion should be denied.

## FACTUAL BACKGROUND

This case arises out of Defendant's botched structural engineering design review, which caused the collapse of an agricultural silo in Tepic, Mexico, cost two workers their lives, and cost Plaintiff over a million dollars in financial loss. As a direct and proximate cause of Defendant's negligent structural engineering design review, Plaintiff suffered substantial damages.

SSC is in the business of manufacturing and selling hopper silos for handling and storing commodities. (Doc. 17, at ¶6). In about 2012, SSC designed a new thirty-foot ("30'") Diameter Hopper Cone Assembly and silo bin for storing bulk density agricultural commodities. Goodsell Aff., Ex. A, Expert Report of John W. Carson, Ph.D., November 21, 2016 ("Carson Report"), 4. Prior to manufacturing and selling the Hopper Cone Assembly and silo bin, Plaintiff took the prudent and responsible step to have its new design vetted by an outside professional engineering firm to determine whether the design would withstand the loads imposed while in use. Goodsell Aff., Ex. B, Retention Letter, July 30, 2012.

In July of 2012, SSC retained Defendant to perform a structural engineering analysis and design review of two hopper cones that are proposed for use with SSC's 18' diameter and 30' diameter grain bins. Goodsell Aff., Ex. B, Retention Letter, July 30, 2012. After completing the project, Defendant delivered its report to Plaintiff and initially advised Plaintiff that the design of the 30' diameter hopper was not sufficient as designed. Goodsell Aff., Ex. C, KC Report, August 28, 2012. The report states that "hand calculations" were completed. *Id.*, at 2. Nowhere in the 26-page report does the phrase "spot check" appear. *Id.*

On October 2, 2012, Defendant acknowledged that its initial position with respect to the 30' Hopper was wrong and revised its report. Goodsell Aff., Ex. D, KC Letter, October 2, 2012. Defendant instead concluded that the design of the 30' diameter hopper was adequate and safe for handling the load capacity for commodity storage and delivery. *Id.* Defendant's initial error regarding the 30' Hopper design is not material to the facts giving rise to this case. Relying on Defendant, Plaintiff finalized plans for the assembly and manufacturing of the hopper silo, and ultimately, marketed and sold the hopper silo to its customers. *See* Goodsell Aff., Ex. E, Deposition of Chad Kramer ("Kramer Depo."), 40:11-16.

3

Defendant knew that Plaintiff retained the Defendant *specifically* to review the design for load capacity of commodities and the safe storage and handling of commodities.  Goodsell Aff., Ex. F, Deposition of Derek Matthies ("Matthies Depo."), 62:8-18; *see also*, Amended Complaint ¶11.  In fact, Defendant had *specifically* agreed to review the drawings and calculations of the new design.  Goodsell Aff., Ex. B, Retention Letter, July 30, 2012.  Defendant alleges that because it did not receive the SSC's calculations, it only performed "spot checks" of SSC's calculations.  Goodsell Aff., Ex. K, O'Mara Depo. 48:5-10. Defendant never advised SSC that it was limiting its calculation review to "spot checks."  *Id.* at 49:4-20.  Once again, nowhere in its report does it indicate that Defendant was only performing "spot checks" in this design review.  Goodsell Aff., Ex. C, KC Report, August 28, 2012, 1-26.  In fact, Defendant's report indicates that hand calculations were completed without any qualification whatsoever.  *Id.*, at 2.

In November of 2014, Molinos Azteca ("Molinos"), an authorized distributor for SSC, sold a 30' Hopper/Silo to Agropecuaria El Avion ("Agropecuaria") for the handling, storage, and delivery of soybean meal.  (Doc. 17, at ¶12).  Molinos installed the hopper cone and silo at the Agropecuaria plant in Tepic, Mexico.  *Id.*

On or about February 2, 2015, the Agropecuaria Hopper/Silo, approved by Defendant, suffered a catastrophic failure. Two employees of Agropecuaria were discharging the contents of the Hopper/Silo for delivery to Agropecuaria customers when it suddenly and without warning failed, discharging 681,820.00 Kg (approximately 750 tons) of soybean meal and metal debris onto the workers.  *See* Goodsell Aff., Ex. A, Carson Report, 3.  The two Agropecuaria employees suffered fatal injuries. *Id.* As a result of the failure, Agropecuaria sought direct damages from SSC for the loss of equipment and soybean meal, and for contribution and indemnity under Mexican law for the death of its two employees.  (Doc. 17, at ¶ 26).

Shortly after the accident, an investigation was undertaken to determine the cause of the failure. *See generally*, Goodsell Aff., Ex. G, ESI Report, May 11, 2015; Ex. H, Nohr Report, March 3, 2015. The structural failure and discharge of soybean meal occurred when the bolted vertical seams in the hopper separated from the silo and discharged the contents of the silo. *Id.* The investigation revealed a design defect in the bolt spacing and depth in the vertical metal seam at the top of the hopper. *Id.* This error existed at the time the structural design was submitted to Defendant for review.

Had Defendant conducted a *reasonable* analysis of all of SSC's calculations, as agreed to in its retention letter and represented as completed in its August 28, 2012 Report, it would have discovered the under-designed seam. Goodsell Aff., Ex. K, O'Mara Depo., 26:10-17. It is undisputed that the seam design failed to meet industry loading standards for steel bins as set forth in the American Standard, EP 433, and Australian Standard "Loads on Bulk Solid Containers." Goodsell Aff., Ex. J, Deposition of John W. Carson ("Carson Depo."), 24:1-3.

## DISCUSSION

For this Motion, it is critical to understand the event that gave rise to this case. This case was the result of a botched design review by Defendant -- not the ultimate failure of the Hopper/Silo in Mexico. SSC's damages for the Agropecuaria failure are only *a part* of the damages suffered by SSC as a result of Defendant's negligence. In addition to the Agropecuaria settlement, SSC also suffered a loss of business reputation, the cost of retrofitting other Hopper/Silo combinations, and loss of income. *See* Doc. 1, ¶¶ 25, 30-31. The Complaint states a cognizable negligence claim against Defendant, and in fact, Defendant does not contest that fact in this Motion.

The rule for professional negligence in South Dakota is similar to all negligence actions. *See e.g. Lien v. McGladrey & Pullen,* 509 N.W.2d 421 (S.D.1993).

> To recover on a claim for negligence under South Dakota law, a plaintiff must prove the following: (1) there was a duty of care owed by the defendant to the plaintiff, (2) the defendant breached that duty, (3) factual causation, or the plaintiff would not have suffered harm "but for" the defendant's breach, (4) proximate causation, or the harm suffered by the plaintiff was a foreseeable consequence of the defendant's breach, and (5) the plaintiff suffered damages as a result of the breach.

*Lien,* 509 N.W.2d at 423. In this case, Defendant owed a duty to conduct a competent and professional structural engineering design review of the Hopper/Silo, consistent with industry standard. *See South Dakota Bd. of Regents on behalf of Black Hills State University v. Global Synthetics Environmental, LLC,* 270 F.Supp. 1088, 1112 (D.S.D. 2017) (citing *Mid-Western Elec. Inc. v. DeWild Grant Reckert and Associates Co.*, 500 N.W.2d 250, 254 (S.D. 1993)). Defendant's failure to identify the under-designed vertical seam constituted a breach of its duty. As a factual and proximate result of Defendant's breach, the under-designed vertical seam caused SSC actual financial damages, as well as damages likely to result in the future. (Doc. 1, at ¶ 25).

Defendant does not dispute by this Motion that it owed a duty to SSC. Further, Defendant does not dispute that it failed to review the calculations for the under-designed vertical seam. The July 30, 2012, retention letter specifically states that Defendant would review calculations in conducting its design review. Goodsell Aff., Ex. B, Retention Letter, July 30, 2012. Defendant's August 28, 2012 Report states that it completed hand calculations as part of its structural design review. Goodsell Aff., Ex. C, KC Report, 2. In the course of this litigation, Defendant has characterized its calculation reviews as "spot checks." Nowhere in its 26-page report is the phrase "spot check" ever used. *Id.* SSC contends that Defendant's "spot checks"

6

are in fact cover for its failure to find and correct the under-designed seam which was the direct and proximate cause of SSC's damages. Given the foregoing, it is clear that SSC has stated a clear and cognizable claim for professional negligence against Defendant.

### 1. Summary Judgment is Inappropriate in Negligence/Contributory Negligence Cases.

Instead of arguing that SSC failed to present any evidence of Defendant's negligence, Defendant argues that SSC's own negligence bars its claims as a matter of law. South Dakota's rule for contributory negligence is set forth in SDCL 20-9-2, which provides in pertinent part:

> In all actions brought to recover damages for injuries to a person or to that person's property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence…

SDCL 20-9-2. Ordinarily, questions of negligence and proximate cause are for the jury in "all but the rarest of cases." *Lindholm* at 1098, (quoting *Fritz v. Howard Twp.*, 570 N.W.2d 240, 244 (S.D. 1997)). Summary judgment is an improper way to resolve matters of negligence and contributory negligence because such matters fundamentally depend upon what the "reasonable person" would do. *See Wilson v. Great Northern Ry Co.*, 157 N.W.2d 19, 22 (S.D. 1968) (admonishing "that issues of negligence, contributory negligence, and the comparative extent thereof, and proximate cause are ordinarily questions of fact and it must be a clear case before a trial judge is justified in taking these issues from the jury."); *Theunissen v. Brisky*, 438 N.W.2d 221, 223 (S.D. 1989) (questioning, "what advantage is summary judgment to either the court or the parties . . . [i]t would appear that the trial court might well wait until the evidence is in and appropriate motion made for directed verdict."). In other words, unless there is a total void of evidence on a party's behalf, questions of contributory negligence should be left to the jury's ultimate resolution.

Here, there is an abundance of evidence weighing in SSC's favor. SSC has retained engineer Mark Duckett to testify on matters of both causation and standard of care. Goodsell Aff., Ex. J, Expert Report of Mark Duckett ("Duckett Report"), October 5, 2016, 5-6. Mr. Duckett opines that the incident in Tepic was caused by bolt connections on the vertical seams of the Hopper (likely initiating from the top of the Hopper) which contained inadequate edge distances. *Id.* Mr. Duckett further opines that Defendant's failure to address the under-designed seam spacing constituted a breach of the minimum standard of care for engineers performing an engineering analysis for a steel structure. *Id.* at 6.

Mr. Duckett concludes that had Defendant conducted a competent design review, the under-designed seam would have been addressed. *Id.* In other words, "but for" Defendant's negligence, the new Hopper/Silo with the under-designed seam does not go into production, and the failure in Mexico and resulting tragic consequences do not occur. Defendant, not SSC, was in the best position to avoid this failure because it was *specifically* retained to do so. At a minimum, there is sufficient evidence for the jury reach this conclusion and its verdict should not be taken with such obvious disputes of fact still outstanding.

It is important to keep in mind that the entire *purpose* of hiring outside engineering services was to ensure that SSC's new product line was safe for its customers. This was a prudent and laudable step for SSC to take. It was an additional safety measure taken by SSC to ensure the quality and safety of its product. SSC had no reason to think its design was unsafe specifically because a professional engineering company had told them that it was. *See* Goodsell Aff., Ex. C, KC Report. When viewed in its totality, there is sufficient evidence for the jury to weigh and balance Defendant's negligence against any alleged negligence by SSC. When

viewed in the light most favorable to SSC, clear fact issues remain. Because of this, summary judgment is inappropriate, and Defendant's Motion should be denied.

### 2. SSC's Alleged Negligence (If Any) Is Slight

Assuming *arguendo*, that SSC's alleged negligence contributed in any way to the failure in Tepic and resulting damages from the under-designed seam, it remains to be determined whether SSC's negligence was "greater than slight." The question of a plaintiff's contributory negligence is a two-step inquiry. *Nugent v. Quam*, 152 N.W.2d 371, 374 (1967). "The first step of the *Nugent* analysis is a determination of whether the plaintiff and the defendant were negligent. If either is found to be not negligent, "there can be no application of the comparative negligence law." *Nugent,*152 N.W.2d at 377. As always, the standard of conduct is the reasonable and prudent person. *Id.*

If both are found to be negligent, the second step of the process requires that the negligence of the plaintiff must be compared to the negligence of the defendant. *Westover v. E. River Elec. Power Coop., Inc.,* 488 N.W.2d 896, 897 (S.D. 1992). In making such a determination there is a direct comparison between the conduct of the plaintiff and the defendant rather than to the standard of the reasonable person. *Id.* (citations omitted).

> Three factors may properly be considered in appraising the quality of a plaintiff's negligence: *the precautions he took for his own safety*; the extent to which he should have comprehended the risk as a result of warnings, experience, or other factors, and the foreseeability of injury as a consequence of his conduct. These factors of course may overlap in a given case, for a plaintiff may increase the foreseeability of injury by failing to take safety precautions and greater precautions may be expected if he is aware of danger.

*Id.* at 898 (citing *Associated Engineers v. Job*, 370 F.2d 633, 641 (8th Cir 1966) (emphasis added). "It is only when the facts show beyond *any* dispute that plaintiff has committed negligence more than 'slight,' that it is appropriate for the circuit court and this court to hold, as

9

a matter of law, for a negligent defendant." *Id.* (emphasis added). The balance of these factors weighs in SSC's favor.

In this case, SSC took the extraordinary precaution of *hiring Defendant to review the design*. Because of this, there remains considerable doubt that SSC was negligent *at all*. Moreover, Defendant never warned SSC that its design review was deficient. There was no way for SSC to appreciate the harm created by Defendant's negligence. At a minimum, there is sufficient evidence for the jury to find the Defendant liable for its structural design review of SSC's product.

> Despite this, Defendant has alleged SSC was negligent in the following ways:
>
> (1) SSC negligently designed the Hopper/Silo submitted to Defendant for professional engineering review, (2) SSC did not have appropriate internal measures to "catch" the mathematical error submitted to Defendant for professional engineering review, and (3) SSC did not "catch" Defendant's error when Defendant approved the design submitted to Defendant for professional engineering review.

(Doc. 33, at 11). Facially, Defendant's arguments are circuitous -- the *Defendant* accepted the duty to catch SSC's errors, but blames SSC for not catching Defendant's errors. If Defendant's argument were accepted, then that would mean Defendant would never be liable for negligent work it performs for others, because the client should have known that Defendant's work could be negligent. This argument is nonsensical. Moreover, it violates public policy because it *discourages* designers, such as SSC, from having their products reviewed by outside parties. In addition, Defendant's argument, *encourages* reviewers, such as the Defendant, to "rubber stamp" projects or do sloppy work, because they face no liability. Public policy should abhor this suggestion because it puts the public's safety at risk. Moreover, accepting Defendant's argument emboldens it to take other clients' money, "rubber stamp" the work, and then blame the client when something fails – without any liability. In other words, accepting Defendant's argument

encourages parties performing these types of services to be negligent in the performance of their duties.

Defendant's first allegation of negligence -- that SSC submitted to Defendant for professional review a negligently designed Hopper/Silo -- is paradoxical. Defendant accepted SSC's $5,500 with the knowledge that there *could* be a design error in the drawings and calculations SSC submitted. Logically, every engineering design review inherently involves the *possibility* of an error in the design. The *fundamental* purpose of hiring an outside firm to conduct a design review is to *find and correct* potential errors. Goodsell Aff., Ex. K, O'Mara Depo., 9:22-25, 10:1-5. Defendant was hired to find defects. It failed to do so. This was Defendant's error, not SSC's.

Furthermore, Defendant ignores that if it had done the job it was paid to do the under-designed seam would have been caught and corrected. Defendant was supposed to be the prophylactic measure taken by SSC to ensure the quality and safety of its customers. Had Defendant done a competent structural design review, SSC's error would have never been a problem. At a minimum, the balance of SSC's negligence, if any, should be left to the jury's determination.

Defendant's second allegation of negligence is equally, if not more, confounding than its first. Defendant contends that SSC was negligent because it did not have appropriate internal measures to "catch" the mathematical error submitted to Defendant for professional engineering review. (Doc. 33, at 11). Setting aside that Defendant has failed to identify what sort of duty SSC has in this regard, Defendant completely ignores that Defendant's design review was supposed to be the additional measure to "catch" SSC's mathematical error.

Defendant's argument seeks to negate the benefits and desirability of "external" review. The entire purpose of Defendant's design review was to put a fresh pair of eyes on the project. Defendant's design review was intended to avoid biases, such as affinity bias or confirmation bias, by having neutral engineers vet the project. Any duty SSC had to have "internal measures" to "catch" its mathematical error was satisfied by its retention of Defendant's professional services. *Defendant was supposed to be the additional safety measure that SSC cannot provide for itself.* For Defendant to argue that SSC's claim should be barred because it lacked additional "internal measures" is simply unfair. Summary Judgment should be denied on this basis.

Defendant's final allegation is that SSC was more than slightly negligent as a matter of law for not "rechecking" Defendant's report. This argument is misguided for three reasons.

First, SSC owed no duty to double check Defendant's work. Defendant was hired to check SSC's work, not the other way around. As Mr. Duckett explains, design reviews are not a two-way street. Goodsell Aff., Ex. L, Deposition of Mark Duckett, 60:1-17. One who hires another to review his or her work does not then owe a duty to make sure that the "checker" has done what he or she says has been done. *Id.* Such a duty would turn the whole relationship on its head.

Second, Mr. Kramer obviously thought he had designed a safe and effective Hopper/Silo. Defendant was not hired as a "test" for the Defendant, to see if it could catch SSC's error. Instead, Defendant was hired to *actually* catch any error, which SSC had overlooked. Defendant failed in that essential purpose and tragedy ensued. Defendant's argument seems to suggest that SSC should have hired a *second* reviewer to review the *Defendant's* external review. If that were required, the chain of review and re-review would never end. No such obligation on SSC exists. "The buck stops" with Defendant's duty. That was its job.

Third, contrary to Defendant's representation, Kramer did review the report. In fact, upon receipt of the first report, which indicated that it believed the 30' Hopper/Silo was under designed, Kramer disputed Defendant's findings. Upon realizing its own error, Defendant agreed with Kramer's analysis and modified its position. Goodsell Aff., Ex. K, O'Mara Depo., 54:4-12. Although Kramer did not review the details of Defendant's report, he did review the conclusions. Goodsell Aff., Ex. E, Kramer Depo. 46:16-19; 48:7-12. Because Defendant reached the same conclusions as Kramer, he did not "re-review" the Defendant's work. Ultimately, it is for the jury to say whether relying on a professional engineering company to act as a professional engineering company is reasonable in comparison with Defendant's negligence. SSC contends that it is. Defendant contends that it was not.

Defendant relies on *Starnes v. Stofferahn* to support its position in this Motion. (Doc. 32, at 10). That case involved a farmer, Starnes, who was injured by a self-unloading wagon leased from Stofferahn. *Id.* The wagon had a protruding axle at the universal joint at the end of the drive shaft. Starnes admitted that he was aware of the protruding axle, and appreciated the danger it presented. *Id.* at 428. While assisting with unloading the wagon, Starnes' clothes became entangled with the axle and he suffered serious injuries. *Id.* Because he knew of the dangerous screw and still failed to take necessary precautions to protect his own safety, he was found to be contributorily negligent, more than slight. *Id.*

By contrast, here, SSC took prudent and thoughtful precautions for the dangers presented by its work. SSC had the product designed by its in-house engineers, and hired Defendant as an additional safety measure to verify the product was safe. When KC approved the design plan submitted, SSC had no reason to suspect any danger presented by its new design. In reliance on Defendant's report, SSC began production of the new design without any knowledge of any

13

danger presented by the Hopper/Silo.  Unlike the plaintiff in *Starnes*, judgment as a matter of law is improper because of the absence of an open and obvious peril.

Defendant also relies on *Lovell v. Oahe Elec. Co-op*, as support for its argument that SSC's obvious negligence precludes its recovery in this case as a matter of law. *Lovell* dealt with multiple negligent actions taken, in concert, to create an obvious peril.  *Lovell v. Oahe Elec. Co-op,* 382 N.W.2d 396, 397 (S.D.1986).  *Lovell* is inapposite to this case.

There, Defendant Oahe constructed high-voltage lines across Lovell's farm near an existing well.  *Id.*  The Lovells were attempting to pull a pipe from the well when it contacted the line.  *Id.*  They were holding the pipe when it struck the line and caused them to suffer severe burns.  *Id.*  The Court addressed the three factors set out in *Associated Engineers, Inc. v. Job*, *supra*.

First, the Lovells did not take any precautions for their own safety.  *Id.* at 398.  Second, they fully understood the dangers involved in there activity and disregarded the warnings of Oahe.  *Id.*  Finally, the foreseeability of injury from their conduct was quite clear because the court reasoned that any reasonable person should be aware of the open and obvious dangers of live electrical wires.  *Id.*  The court found the Lovells did not take a single measure to protect themselves from a dangerous situation.  *Id.* at 399.  Because of the totality of the Lovells' negligence, the South Dakota Supreme Court agreed that the Lovells' claims were barred as a matter of law.  *Id.*

*Lovell* is a wholly different case that the one at hand.  Here, SSC made a mathematical error in its initial calculations, *unknowingly*.  Then, it took the extra precaution of retaining an outside firm to find and correct any mistakes in the project.  When that outside firm ultimately did not find any issue in SSC's design, it relied on that paid engineering expertise of Defendant

to begin production on the new design. It remains to be determined whether Defendant exercised due care under the circumstances. *Theunissen* at 224. This is a question of fact for the jury.

Defendant also relies on *Lindholm v. BMW of N. Am., LLC*, 2016 WL 4399306, at *11 (D.S.D. Aug. 17, 2016). Once again, Defendant ignores the fundamental difference between its authority and the instant case. *Lindholm*, like *Starnes* and *Lovell*, involved an open and obvious danger that was not present in this case. *Id.* In *Lindholm*, the plaintiff was using a carjack for a purpose that had been expressly prohibited in the jack manufacturer's warning. Here, no such warning was given. Defendant never once advised SSC that it was doing "spot checks" instead of the full calculations review as set out in the retention letter. Further, the August 28, 2012 report indicated that the hand calculations had been completed. Goodsell Aff., Ex. C, KC Report, pg. 2. Defendant never warned SSC, either expressly or implicitly, that it would not be checking the bolt spacing calculations on the vertical seam of the Hopper. As such, the analysis in *Lindholm* is not helpful to the Court's comparative negligence analysis here.

The comparative negligence analysis in this case is closer to, although still dissimilar from, *Theunissen v. Brisky*. 438 N.W.2d 221, 223 (S.D. 1989). *Theunissen* was a wrongful death case, arising from a collision. *Id.* The plaintiff attempted to make a left-hand turn when he was struck by a semi-truck. *Id.* The accident occurred during low visibility, on snow covered roads. *Id.* The court found that because of the limited visibility, and therefore, the plaintiff's diminished ability to see and appreciate the danger of the oncoming semi-truck, the issue of whether the plaintiff's actions were negligent was a matter for a jury to determine. *Id.* at 224.

Similarly, in this case, SSC's perception of harm, if any, was obfuscated by Defendant's negligent design review. SSC was handicapped in its ability to appreciate the danger because of its reliance on Defendant. It is for the jury to determine whether SSC should have known and

15

appreciated the fact that Defendant had not competently performed the calculations, which caused the Hopper to have an overstressed vertical seam.

It also remains a question for the jury to determine whether it was reasonable for SSC to rely on Defendant to perform the competent engineering services it had been paid to perform. It remains for the jury to determine whether it was reasonable for SSC to not "re-check" the math of the engineering company it paid to check its own math. And it remains for the jury to determine whether Defendant's negligent design review was the cause of SSC's damages. Given these outstanding factual questions, and the forgoing analysis (and admonishments) from the South Dakota Supreme Court on SDCL 20-9-2, summary judgment is wholly inappropriate in this case, and Defendant's Motion should be denied.

## CONCLUSION

Because, when viewed in the light most favorable to SSC, genuine issues of material fact remain to be determined by the jury, Plaintiff respectfully requests the Court deny Defendant's Motion for Summary Judgment.

Dated this 6th day of April, 2018.

                        GOODSELL QUINN, LLP

                        BY: */s/ G. Verne Goodsell*
                            G. Verne Goodsell
                            Nathan R. Oviatt
                            246 Founders Park Dr., Suite 201
                            P.O. Box 9249
                            Rapid City, SD 57709-9249
                            Tel: (605) 343-3000
                            Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that he served a true and correct copy of the foregoing *Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment* upon the person identified below by US Mail, E-Mail and Odyssey File and Serve System:

       Michael F. Tobin
       Mitchell W. O'Hara
       Boyce Law Firm, LLP
       300 S. Main Ave., P.O. Box 5015
       Sioux Falls, SD 57117-5015
       mftobin@boycelaw.com
       mwohara@boycelaw.com
       Attorneys for Defendant

Dated this 6th day of April, 2018.

                                          */s/ G. Verne Goodsell*
                                          G. Verne Goodsell