UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

---

SIOUX STEEL COMPANY, a South
Dakota corporation,

         Plaintiff,

vs.

KC ENGINEERING, P.C., an Iowa
corporation,

         Defendant.

Civ. 15-4136

**REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY
JUDGMENT**

---

Defendant, KC Engineering, P.C. ("KC Engineering"), by and through its undersigned attorneys of record, respectfully submits this reply brief in support of its motion for summary judgment. Plaintiff Sioux Steel ("Sioux Steel") attempts to avoid any and all responsibility for its own negligence by pointing the finger at KC Engineering. However, Sioux Steel's arguments are against the weight of legal authority and, as such, this Court should find, as a matter of law, that Sioux Steel was more than slightly negligent and, thus, dismiss Sioux Steel claims.

**ARGUMENT**

First, this Court should take notice of what has been admitted in this case. Chad Kramer ("Kramer"), an engineer for Sioux Steel who designed the Hopper Bin that ultimately collapsed and caused two fatalities, was responsible for calculating the various loads, forces, and stresses that were to be applied to the Hopper Bin in addition to the Hopper Bin's utilization ratios. (Doc 31, ¶ 10). Kramer is a designer and structural engineer. (Affidavit of Michael Tobin dated April 20, 2018 ("Tobin Aff."), Exhibit A). Sioux Steel admits, through the testimony of Kramer, that it negligently designed the Hopper Bin when Kramer failed to use the correct formula in the

Hopper Bin's design.  (*Id.*, ¶¶ 17, 18).  According to Sioux Steel, these mathematical errors caused structural problems to the Hopper Bin, which ultimately caused its collapse.  (*Id.*, ¶ 19). Furthermore, Sioux Steel acknowledges that it never provided KC Engineering with its calculations for review even though the agreement between Sioux Steel and KC Engineering called for said calculations.  (*Id.*, ¶ 26; Doc. 33, Ex. D).  Lastly, Sioux Steel admits that Kramer did not review KC Engineering's report in depth and that, had it done so, it could have known "what was and was not checked by KC Engineering," which would have included the vertical seams.  (*Id.*, ¶ 36).

 With these undisputed facts in mind, Sioux Steel's negligence, as demonstrated above, can undoubtedly be described as "more than slight."  As stated in KC Engineering's initial brief, the burden of demonstrating "slight negligence" does not take much.  *Friese v. Gulbrandson*, 69 SD 179, 189, 8 N.W.2d 438, 442 (1943) ("slight" as "small of its kind or in amount; scanty; meager"); *Nugent v. Quam*, 82 SD 583, 600, 152 N.W.2d 371, 380 (1967) (discussing slight as "small in amount or of little important or insignificant or unsubstantial or inconsiderable").  Here, the undisputed material facts demonstrate that Sioux Steel's negligence was more than slight.

Sioux Steel attempts to argue that summary judgment is inappropriate in contributory negligence cases.  However, in doing so, Sioux Steel ignores the many South Dakota Supreme Court cases that have found and dismissed a plaintiff's claims as a matter of law based on contributory negligence.  *See Lindholm v. BMW of N. Am., LLC*, 202 F. Supp. 3d 1082, 1100 (D.S.D. 2016), aff'd, 862 F.3d 648 (8th Cir. 2017) (granting summary judgment based on contributory negligence as a matter of law); *Schmidt v. Royer*, 574 N.W.2d 618, 627 (S.D. 1998) ("In some cases, whether one's contributory negligence was more than slight may be decided as a

matter of law."); *Westover v. E. River Elec. Power Coop., Inc.*, 488 N.W.2d 892, 896 (S.D. 1992) ("It is only when the facts show beyond any dispute that plaintiff has committed negligence more than 'slight,' that it is appropriate for the circuit court and this court to hold, as a matter of law, for a negligent defendant."); *Lovell v. Oahe Elec. Co-op.,* 382 N.W.2d 396 (S.D. 1986) (finding negligence more than slight as a matter of law).   The legal issue here is straightforward; Sioux Steel has admitted that it committed negligence in the initial design of the Hopper Bin, it has admitted that it did not provide KC Engineering with its calculations to review, and it has admitted that it never thoroughly reviewed KC Engineering's report.   These facts, taken together, more than amply demonstrate that, as a matter of law, Sioux Steel's negligence in this case was "more than slight."   Moreover, these facts are not disputed and are admissions from Sioux Steel's own engineer—and Sioux Steel is not entitled to better facts than those testified to by its own engineer.  *Dartt v. Berghorst*, 484 N.W.2d 891, 897 (S.D. 1992).

Sioux Steel cites *Theunissen v. Brisky* in support of its argument that the issue of slight negligence is a jury question.  438 N.W.2d 221, 223 (S.D. 1989).  In *Theunissen*, a semi-truck driver collided with the plaintiff while the plaintiff was attempting to make a left-hand turn in front of the semi-truck driver.  *Id.*   At the time of the collision, the weather was cold, it was snowing, visibility was diminished, and the concrete pavement was covered with snow.  *Id*.  The South Dakota Supreme Court analyzed whether plaintiff's negligence was more than slight compared to the semi-truck driver's negligence.  *Id.*   The court found that it was a question of fact as to whether the plaintiff exercised due care when he made a left-hand turn in front of the truck driver given the hazardous snow conditions.  *Id*.  These questions of fact existed due to lack of evidence in the record firmly establishing the driving experiences as to both drivers.

*Theunissen* is of little relevance to the case at hand.[1]  The facts here are clear, especially given that Sioux Steel cannot claim a "better version of the facts than [it] has given in [its] own testimony."  *Dartt v. Berghorst*, 484 N.W.2d 891, 897 (S.D. 1992).  The undisputed facts demonstrate that Kramer negligently designed the Hopper Bin, negligently failed to provide KC Engineering with calculations to review, and negligently failed to thoroughly review KC Engineering's report.  In *Theunissen*, there existed a question of fact for the jury as to whether plaintiff's left-hand turn was in fact negligent, while here, Sioux Steel has directly admitted multiple instances of negligence.  These admissions are directly from Sioux Steel's own engineer, and there is no need to put any more evidence in the record.

The issues presented by KC Engineering can be wholly determined by the submitted undisputed material facts.  Kramer admitted in his deposition that he had committed a math error related to the utilization ratios in the design of the Hopper Bin.  (Kramer Depo., 24).  This was because Kramer failed to utilize the correct formula for calculating the utilization ratios. (Kramer Depo., 92-93).  Kramer also testified that he believed the math errors related to the utilization ratios ultimately caused the Hopper Bin to collapse and that he discovered this upon receiving photos from the collapse.  (Kramer Depo., 83-84).  Kramer further testified that he "made the mistake" and that there was "responsibility on both parties."  (Kramer Depo., 88).  He goes on to state that calculations were not provided to KC Engineering and, furthermore, that he never reviewed KC Engineering's report in depth.  (Doc. 33, ¶¶ 26, 30).

Therefore, before this Court is a purely legal inquiry, that is, was Sioux Steel more than slightly negligent when it designed the Hopper Bin with a mathematical error related to the Hopper Bin's utilization ratios; when it failed to provide KC Engineering with its calculations to

---

[1] As cited to in KC Engineering's initial brief, there have been multiple instances where South Dakota has found a plaintiff's negligence more than slight in the context of traffic accidents.  (Doc. 32, Footnote 5).

4

review; and when it failed to thoroughly review KC Engineering's report? The answer to this question is an unequivocal "**Yes**."[2]

Sioux Steel further attempts to argue some sort of "proximate cause" theory, that is, "but-for" KC Engineering's failure to catch Sioux Steel's negligence, the Hopper Bin would not have collapsed. (Doc. 40, p. 11). The logic of this argument fails for multiple reasons. "Proximate cause is defined as 'a cause that produces a result in a natural and probable sequence and without which the result would not have occurred. Such cause need <u>not be the only cause of a result</u>. It may act in combination with other causes to produce a result." *Hamilton v. Sommers*, 2014 SD 76, ¶ 39, 855 N.W.2d 855, 867 (quoting *Peterson v. Issenhuth*, 2014 SD 1, ¶ 17, 842 N.W.2d 351, 355–56) (emphasis added). Sioux Steel's argument can be turned directly against it. If Sioux Steel was (1) not initially negligent in the design of the Hopper Bin; (2) had Sioux Steel adequately reviewed what KC Engineering's review entailed; or (3) had Sioux Steel just given KC Engineering its calculations, the Hopper Bin would not have collapsed. Absent KC Engineering, Sioux Steel's negligent design still caused the Hopper Bin to collapse and, therefore, Sioux Steel's proximate cause argument has no force. Sioux Steel's proximate cause argument entirely ignores that Sioux Steel was negligent at various stages prior to and after KC Engineering conducted its review; and that at each stage, Sioux Steel could have remediated the defective design and its failure to do so ultimately caused the unfortunate collapse.

---

[2] The factors elucidated in *Lovell v. Oahe Elec. Co-op*., 382 N.W.2d 396, 399 (S.D. 1986) weigh in favor of finding slight negligence; Kramer's experience as an engineer should have led him to discover his negligent mathematical error, Sioux Steel had no internal review procedure overseeing Kramer or checking his work, Sioux Steel failed to thoroughly review KC Engineering's report, and Sioux Steel did not even bother to provide KC Engineering its calculations.

Sioux Steel next claims that it is absolved of all responsibility and liability the moment it hired KC Engineering to conduct a design review.[3] (Doc. 40, p. 10). However, this goes against not only common sense, but the general principles of the law.[4] According to the Restatement (Second) Torts, while the failure to catch an error may subject a party to liability for failing to catch it, it does not excuse an initial negligent wrongdoer. *See* Comment on Subsection (1)(b). These principles are at work here; Sioux Steel's liability, as it relates to its negligent design of the Hopper Bin, does not simply vanish when Sioux Steel retained KC Engineering to review said design—a party cannot abdicate all responsibility for its egregious errors by simply handing off review of a project to another party.[5] *See Garnes v. Gulf & W. Mfg. Co.*, 789 F.2d 637, 641 (8th Cir. 1986) (whereby manufacturer may not delegate its duty to design a reasonably safe product); *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 205 (8th Cir. 1981) (applying Missouri law) (whereby "manufacture has a non-delegable duty to design and manufacture a safe product).

---

[3] It should be noted that KC Engineering's design review never contemplated that the Hopper Bin would store soybean meal and, had it been contemplated, KC Engineering would have likely conducted a different review process, especially regarding the use of EP 433. Sioux Steel's efforts to shift all responsibility to KC Engineering is even more misplaced given this fact as the design review sought was flawed and imperfect from the start as Sioux Steel allowed Agropecuaria to use the Hopper Bin for a material not contemplated by KC Engineering.

[4] Restatement (Second) of Torts, Section 452, states:

> [T]he failure of the third person to act to prevent harm to the other threatened by the original actor's negligent conduct, is not a superseding cause of such harm, and so does not relieve the actor of liability for the harm which he has in fact caused. If the third person is under a duty to the other to take such action, his failure to do so will subject him to liability for his own negligence, **which is concurrent with that of the actor**, for the resulting harm which he has failed to prevent; but his failure to perform his duty **does not relieve the original actor of liability for the results of his own negligence.**

(emphasis added).

[5] If Sioux Steel wanted to delegate all responsibility for any negligence it committed in its initial design of the Hopper Bin to KC Engineering, then Sioux Steel should have done so by express agreement. *See* Restatement (Second) of Torts § 452 (1965) ("One way in which the responsibility may be shifted is by express agreement between the actor and the third person."). The agreement between Sioux Steel and KC Engineering did not contain any provision whatsoever related to liability as to KC Engineering's services. (Doc. 33, Ex. D).

Furthermore, Sioux Steel's argument that KC Engineering was "in the best position" to catch Sioux Steel's mistake is blatantly false; Kramer, the engineer who designed and created the Hopper Bin, was obviously in the best position to catch his own mistake as KC Engineering was not in possession of the calculations that contained the error.  Such mistake could have been caught initially or upon reviewing KC Engineering's report, in which Kramer would have realized that the vertical seams were never reviewed.  Regardless, the proposition that a party can relinquish all liability and responsibility by simply having another party review its work is neither based in law or public policy—it isn't coincidental that Sioux Steel <u>fails to cite any case law whatsoever</u> backing up such a proposition.

In fact, the National Society of Professional Engineers ("NSPE") disagrees with Sioux Steel's proposition that a third-party reviewer should be absolutely liable for any mistakes it fails to catch.  In NSPE Position Statement No. 1780, the NSPE states that:

> NSPE supports the enactment of professional engineer peer review statutes in each jurisdiction. Further, <u>NSPE believes that professional engineers participating in peer review and post-project review processes should be protected by appropriate legal immunity and legal privilege.</u> Peer reviews include the review of designs by a third-party prior to project completion, as well as in-house post-project reviews of completed projects to identify engineering best practices that can be incorporated into future engineering designs. Both types of reviews, because they lead to improved practices, will also inherently benefit the public health, safety, and welfare. <u>Well-crafted peer review legislation which includes appropriate safeguards can help to limit the liability and risk exposure for both engineers and engineering firms that employ peer reviewers as well as those engineers who actually perform the peer reviews and post-project reviews.</u>

(Tobin Aff., Ex. B) (emphasis added).  The NSPE goes on to further advocate uniform national legislation that would provide "civil immunity" for "third-party reviewer[s]," which would encourage third-party review for the benefit of the public.  (*Id.*)  *See also Carlson v. Constr. Co.,* 2009 SD 6, ¶ 11, 761 N.W.2d 595, 599 (industry standards are a factor to be considered in

negligence actions).   Moreover, the American Society of Civil Engineers' ("ASCE") Policy

Statement 351—"Peer Review" further states that:

> Peer reviews <u>are in addition to the normal quality control and checking</u>
> <u>procedures required on any engineering assignment</u>.

(emphasis added).[6]

Recently, states have codified the engineering industry recommendation that third-party

reviews should be immune from civil liability.   *See* Mo. Ann. Stat. § 537.033 (outside peer

reviewer immune from civil liability); KS Stat § 74-7047 (same).   As such, both jurisprudence

and industry standards dictate that a designer cannot abdicate its duty to have reasonable quality

control over its own design by simply having said design reviewed by a third party.

The supporting authority referenced above also directly rebuts Sioux Steel's assertion

that holding third-party reviewers entirely liable for the negligence of the initial designer would

discourage said designers from having their products reviewed by outside parties.   This is not

only false—but Sioux Steel fails to recognize the broader public policy consequences of

upholding its argument, which sets up various perverse incentives.

First, Sioux Steel's rule would remove the initial designer's motivation to create a safe

product design knowing that all liability will be passed over to a third-party reviewing company.

Thus, the party creating the initial design is encouraged to do so negligently as such party will

face no consequences—by having the ability to relinquish all liability, there is no incentive for

the initial designer to safely design a product.

Second, if a reviewing third party is on the hook for the entire liability of the designing

party's negligence, reviewing third parties will cease to exist or, otherwise, their services will be

---

[6] This policy statement also emphasizes that peer reviews "address a defined scope as set forth by the initiating party" and, furthermore, that "[q]uality [c]ontrol and checking of engineering project deliverables is an important but separate process normally undertaken by the designer, associated team members and organizations."   (Tobin Aff., Ex. C).

prohibitively expensive.  Here, KC Engineering was paid a paltry sum of $5,500.00 to review Sioux Steel's design, however, Sioux Steel now wants to expose KC Engineering to the entirety of liability stemming for Sioux Steel's initial negligence.  Under Sioux Steel's theory, it can be expected that third party reviewing companies will essentially disappear, which will ultimately lead to less mistakes being caught, and more unsafe designs being promulgated.  This principle has been recognized by both the ASCE and the NSPE.  (Tobin Aff., Exs. B & C).  Public policy clearly weighs against absolving all liability towards Sioux Steel as it was the initial designer of the faulty Hopper Bin.

Ultimately, this Court is tasked with determining whether Sioux Steel's "contributory negligence is determined to be small in comparison with" KC Engineering's negligence.  *Crabb v. Wade*, 84 SD 93, 98, 167 N.W.2d 546, 549 (1969).  Here, the evidence establishes that Sioux Steel was guilty of negligence more than slight when its engineer, Kramer, negligently designed the Hopper Bin, negligently failed to send KC Engineering its calculations, and negligently failed to review KC Engineering's report.  Furthermore, Sioux Steel's liability was not relinquished by merely retaining a third party to review its faulty and negligent design.  As such, this Court must find, as a matter of law, that Sioux Steel's claims are barred by the doctrine of contributory negligence.

## CONCLUSION

For the above-stated reasons, this Court should grant KC Engineering's Motion for Summary Judgment for the reason that Sioux Steel was contributorily negligent more than slight as a matter of law.

Dated this 18th day of April, 2018.

                                  /s/     *Michael F. Tobin*
                                  Michael F. Tobin
                                  Mitchell W. O'Hara
                                  BOYCE LAW FIRM, L.L.P.
                                  300 South Main Avenue
                                  P.O. Box 5015
                                  Sioux Falls, SD  57117-5015
                                  (605) 336-2424
                                  mftobin@boycelaw.com
                                  mwohara@boycelaw.com
                                  Attorneys for Defendant KC Engineering, P.C.